Bobert H. Wagner, J.
This matter arises from a petition filed on April 15, 1970 by the Director of Social Services of the Monroe County Social Services District pursuant to section 233 *595 (of art. 2), and article 4, of the Family Court Act, seeking support payments from the respondent parent, as reimbursement for county expenditures on behalf of her son at Berkshire Farm for Boys.
A petition filed with this court on December 12, 1969 alleged that at 5:00 a.m. on that date, the son entered a building of another with intent to commit a crime therein and while therein took merchandise valued at approximately $89.27, the lawful property of the owner of the building, which act, if committed by an adult, would constitute the crimes of burglary in the second degree and petit larceny, in violation of sections 140.25 and 155.25 of the New York State Penal Law.
At a fact-finding hearing the son admitted the commission of the acts as alleged, a finding was made, and a social investigation by the Probation Department of this court was ordered. Psychological, school and police reports were received and included with the social investigation. The juvenile was released to the custody of his mother pending disposition. During this period a police deposition was filed with the court alleging an act of criminal trespass by the son. No charges were pressed.
At the time the matter was reached for a dispositional hearing on February 11, 1970, the parent, the respondent in the instant action, appeared with her son and the court probation officer. A Law Guardian was not immediately available and there was hesitancy upon the part of the parent to accept the commitment of her son to Berkshire Farm for Boys. The matter was adjourned and a hearing held on February 16, 1970 at which time the Law Guardian was present and the recommendation of the Probation Department was placed on the record.
At this hearing, the Law Guardian, on behalf of the son, waived the right to give testimony and agreed to accept placement at Berkshire Farm for Boys. Upon a direct question to each, mother and son assented to the waiver and the suggested disposition. The court made a finding that the son was a person in need of supervision, treatment or confinement, and committed the son to the Berkshire Farm for Boys pursuant to sections 753 and 758 of the Family Court Act, in effect on that date. Placement occurred on February 19, 1970.
The present petition for support alleges that the Monroe County Department of Social Services is expending the sum of $25 per day for the said child. It further alleges that the respondent in the instant action has refused and neglected to provide fair and reasonable support according to her means and earning capacity. The -respondent, reserving the right to serve a formal answer, filed a notice of motion seeking the dismissal *596 of the petition on the ground that it fails to state a cause of action in that the statutory authority for the proceeding violates the Fifth and Fourteenth Amendments of the United States Constitution and sections 6 and 11 of article I of the Constitution of the State of New York.
Oral argument was heard and briefs have been submitted indicating that the issue raised has not been previously passed upon by the courts of this State and in view of its fundamental nature requires consideration at this time. (See Department of Welfare of City of N. Y. v. Siebel, 6 N Y 2d 536, app. den. 361 U. S. 535, wherein the constitutional issue may have been raised but was not directly decided [no substantial Federal question].)
Berkshire Farm for Boys is an incorporated charitable- institution operating under section 472-e et seq. of the Social Services Law of the State of New York. The commitment in this case was for a period of 18 months. Section 233 of the Family Court Act under which the instant action is brought authorizes this court to order the parent of a child committed under the Family Court Act to an authorized agency to pay such sum as will cover in whole or in part the support of such child. The statute was derived from section 40 of the Children’s Court Act which was first enacted in 1922 (L. 1922, ch. 547).
The respondent, both orally and in her brief, argues that her son was removed from her custody and control without her consent against her wishes and that she is willing, able and eager to provide for her child in her own home. These issues are not relevant to the question of her liability for support payments under section 233 of the Family Court Act. These issues were properly before the court at the time of the dispositional hearing in the delinquency proceeding concerning her son at which she was present and her son was present and represented by the Law Guardian. These issues could have been raised at that time or on an appeal from the decision of this court committing her son to Berkshire Farm for Boys. The issue in the instant proceeding is the right of the State to seek reimbursement from the parent for the maintenance, care, education and rehabilitative training provided for her son while under commitment.
With the issues thus limited, it is not necessary for a determination of this motion by this court, as has been suggested by counsel for respondent, that a definitive label of “ criminal ” or ‘ ‘ quasi-criminal ’ ’ be placed on the delinquency proceedings conducted under the Family Court Act. There can be no civil-criminal distinction between adult cases and juvenile delinquency cases insofar as a child’s constitutional .rights are *597 concerned. (Matter of Gault, 387 U. S. 1.) Neither does it seem helpful for the purposes of this motion to characterize the purpose of the commitment in terms of protection for the public or benefit to the child or his parent.
Parenthetically, the respondent has not seriously questioned the program at Berkshire Farm for Boys. She presents no arguments in substance that this institution does not in fact have a long record of worthy tradition in training boys, the vast majority of whom have returned to their own community as worthy citizens and many of whom have furthered their education, graduated from college and, in fact, have contributed financially and otherwise as alumni to this institution. (See, e.g., Annual Reports, 1969, 1970, Berkshire Farm for Boys, Canaan, New York.)
The respondent makes the argument of unequal treatment for her son, on the alleged analogy of a commitment of a juvenile delinquent to Berkshire Farm for Boys with the sentencing of an adult offender to a State prison. Although in the case of the adult offender, the contention to the contrary has not seriously been raised, it is accepted that the State cannot charge a relative with the cost of the incarceration of the adult criminal. Nevertheless, the right of the State to charge the convicted adult for the cost of his room, board, medical care or rehabilitative training has not, so far as is known, been decided. The concept of modern penalogy with emphasis on prison programs which provide training, workshop and work experiences leading to day-time release and supervised private gainful employment may soon raise this issue, since in those institutions experimenting with such programs some type of reimbursement from the person convicted is advocated. If there is any conclusion to be drawn between the comparison of the disposition and commitment following a juvenile delinquency proceeding and the sentencing of an adult criminal, perhaps it is simply that in the case of the adult the procedure should move further in the direction of the dispositional hearing and the better rehabilitative programs offered the juveniles.
Significantly, although Illinois and California courts have been the most receptive to the argument raised by respondent, neither the United States Supreme Court nor any court in any State has found in favor of the issue raised here, that such statute as section 233 of the Family Court Act violates either the United States Constitution or the appropriate State Constitution. (County of Alameda v. Espinoza, 52 Cal. Rptr. 480 [Cal. App., 1st Dist., 1966]); Department of Mental Hygiene v. Hawley, 59 Cal. 2d 247; Department of Mental Hygiene v. *598 Kirchner, 60 Cal. 2d 716 [1964], vacated on other grounds 380 U. S. 194 [1965] reinstated on remand 62 Cal. 2d 586 [1965]; Kough v. Koehler (413 Ill. 409 [1952].)
Because section 233 of the Family Court Act applies only to parents of juvenile delinquents committed under this act and not to all parents of all minors institutionalized under one of several of the New York statutes (see Code Crim. Pro., § 921, subd. b; Mental Hygiene Law, § 24), it is contended that it is arbitrary in its classification and thus denies the equal protection of the law to those whom it affects. The rule by which this contention must be tested has been stated by the United States Supreme Court on many occasions and need not be set forth in full here. (Lindsley v. Natural Carbonic Cas Co., 220 U. S. 61, 78-79; Morey v. Doud, 354 U. S. 457, 463.)
The States retain the right to make classifications for the carrying out of their lawful purposes so long as reasonable even though not made with mathematical nicety or absolute equality in application.
- The legislative designation of parents of juveniles found to be delinquents and committed to a school such as Berkshire Farm for Boys is a part of a comprehensive grouping of families and juveniles made the basis for Family Court jurisdiction. It has been held that it is constitutionally permissible to draw a distinction between adults and juveniles under 16 years of age for the purposes of jury trials. (Matter of Daniel Richard D., 27 N Y 2d 90.) The requirement that a juvenile found to be delinquent has this right, not accorded the adult criminal, to a judicial hearing on the disposition of his case and his commitment if any (as contrasted with the adult sentencing procedure) flows from the same distinction. The kind of school to which the juvenile may be committed, in this case a private institution, the kind of program which it offers, educational, rehabilitative as well as custodial, is available primarily for the juvenile under 16 and is admittedly much more expensive than the cost of custodial care for the adult criminal. The legislative determination that the finite resources of the State be supplemented insofar as possible by the contributions of parents able to pay is reasonable under these circumstances. (See Dandridge v. Williams, 397 U. S. 471.)
The classification herein of parents of juveniles committed to certain institutions for the purpose of requiring payment of all or part of their cost of the institutional programs would not seem to affect the exercise of fundamental or critical personal rights or come within the compelling governmental interest rule requiring a more stringent standard than required by the cases *599 cited. (See Brown v. Board of Educ., 347 U. S. 483; Harper v. Virginia Bd. of Elections, 383 U. S. 663; Shapiro v. Thompson, 394 U. S. 618; Levy v. Louisiana, 391 U. S. 68.)
To paraphrase the Supreme Court in Dandridge (supra, p. 487) this court does not decide today that this New York State statute is wise, that it best fulfills the relevant social and economic objectives that New York might ideally espouse. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including this one before us. But the intractable economic, social and even philosophical problems presented by the determination to charge parents for the cost of institutionalization of their children are not the business of this court. The Constitution does not empower this court to second guess the difficult responsibility of providing expensive services within the limited tax funds available.
One who sits and listens to the testimony offered in dispositional hearings sometimes has the distinct impression that parent brings whatever kind of proceeding available to have juvenile released from commitment, not on the basis of the best interest of the juvenile, but rather solely for the purpose of avoiding liability under section 233. When this is so, the purposes of the Family Court Act are defeated. Again this is reason for legislative consideration of the instant issue before this court.
With regard to the contention that the enforcement of section 233 violates the constitutional requirements of due process, it is held that procedurally these are met in the provision for notice, judicial hearing and appeal accorded parents by the statute and substantively met by the rationality of the statute in its context of the Family Court Act (Snell v. Wyman, 281 F. Supp. 853).
The motion is denied.