[Civ. No. 56903. Second Dist., Div. Two. May 27, 1980.]

In re GREGORY K., A Person Coming Under the Juvenile Court Law. COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. SUSAN K., Defendant and Appellant.

COUNSEL

Carl C. Schiff, Ronald R. Talmo and Fred Okrand for Defendant and Appellant.

John H. Larson, County Counsel, Gary N. Miller and Robin A. Ruffra, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

COMPTON, J.— Is it constitutionally permissible for a juvenile court to order the parents of a minor child to pay the costs of maintain-

ing the minor in a county detention facility when the minor was placed in such facility pursuant to a petition for wardship which was subsequently dismissed for lack of sufficient evidence? This precise question, as best we can determine, has never been treated in any of the reported cases.

The California Juvenile Court Law, more specifically Welfare and Institutions Code sections 903 through 908, establishes a procedure by which the juvenile court, after a hearing, may, according to financial ability, order the parent, guardian or other person who is liable for the support of a minor, to reimburse the county for the costs of maintaining a minor in a county institution when the minor has been *placed, detained* or *committed* to such institution pursuant to an order of the juvenile court.

The statutes vest the juvenile court with authority to examine into each case to determine financial ability and the amount claimed to be due. Welfare and Institutions Code section 906 limits the amount chargeable to the actual cost of maintenance.

The appropriately designated county officer is required to promptly notify the person liable for the cost in writing, and such person may claim an inability to pay on forms provided. (Welf. & Inst. Code, § 906.) Such claims are investigated and the results reported to the juvenile court. (Welf. & Inst. Code, § 908.) An order for payment is tantamount to a judgment upon which execution may be effected after 15 days notice to the person liable.

In the case at bench the minor son of Susan K. was arrested in September of 1977 by officers of the Los Angeles Police Department on suspicion of murder. He was ordered detained pending a hearing on a petition for wardship. In February of 1978, the petition alleging that the minor came within the provisions of Welfare and Institutions Code section 602, was sustained and the minor was continued in detention until further order of the court.

In April of 1978, on an application for a rehearing, the juvenile court found that statements of the minor which had been admitted against him in the previous adjudication hearing, were involuntarily given. The petition was ordered dismissed and the minor released.

Thereafter Susan received a written request from the county for payment of $645.24, as the cost of maintaining her son during the seven months that he was held in detention. When she refused to pay, she received a notice to appear at a hearing in the juvenile court. She appeared with counsel and contested the constitutionality of her being required to pay. She did not, and does not, claim that she is financially unable to pay. The court ordered payment. The parent has appealed.

Clearly the circumstances of this case are squarely within the literal language of Welfare and Institutions Code section 903. The minor was *detained*, pursuant to court order, in a county facility and the parent has the ability to pay. The parent's claim to relief then must rest on establishing the invalidity of the statute.

Two significant opinions of the Supreme Court serve as a starting point of our analysis. In *Department of Mental Hygiene* v. *Hawley* (1963) 59 Cal.2d 247 [28 Cal.Rptr. 718, 379 P.2d 22], it was held that a then existing provision of the Welfare and Institutions Code imposing liability on family members for the cost of maintaining an individual in a state hospital was unconstitutional as applied to the father of a 19-year-old boy charged as an adult with a criminal offense but confined in a state hospital as presently insane pursuant to Penal Code section 1368.

In *Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353], the same result obtained in a case in which reimbursement was sought from the daughter of a woman confined in a state hospital under a civil commitment.

The rationale of those cases was that when confinement, whether as a result of an alleged criminal violation or a civil commitment, has the purpose of protecting society or rehabilitating the individual, kinship to the individual is not, per se, an adequate basis for requiring a person to pay the cost of detention or treatment.

In *Department of Mental Hygiene* v. *Hawley, supra,* 59 Cal.2d at pages 255-256, it is stated: "The enactment and administration of laws providing for sequestration and treatment of persons in appropriate state institutions—subject of course, to the constitutional guaranties—who would endanger themselves or others if at large is a proper state function; being so, it follows that the expense of providing, operating

and maintaining such institutions should (subject to reasonable exceptions against the inmate or his estate) be borne by the state.... [¶] The mere fact that innocent persons are relatives of an accused or convicted person does not deprive them of *their* fundamental rights or constitute a lawful basis for a statute or judgment whereby their property may be taken to pay the costs of prosecuting, detaining, or otherwise treating the accused."

The parental liability established by Welfare and Institutions Code section 903—the liability involved in this case—survived a claim of unconstitutionality in *County of Alameda v. Espinoza* (1966) 243 Cal. App.2d 534 [52 Cal.Rptr. 480], a case involving a minor as to whom a petition of wardship, pursuant to Welfare and Institutions Code section 602, was *sustained.* There the Court of Appeal for the First District distinguished *Kirchner* and *Hawley* primarily on the basis that a parent has the duty to support a minor child independent of the statute and that duty continues even though the state interferes with the parent-child relationship to the extent of providing care and maintenance.

The Court of Appeal in *Espinoza* found the policy as then stated in Welfare and Institutions Code section 502[1] a sufficient basis for distinguishing juvenile court proceedings from adult criminal proceedings and thus to place juvenile proceedings beyond the pale of the above quoted language from *Hawley*, which language on its face would appear to be all inclusive.

In *Espinoza* the court acknowledged the existence, but rejected the validity, of a widely held belief that under current practices juvenile court proceedings involving petitions under Welfare and Institutions Code section 602 are in reality criminal proceedings and the claim that such proceedings are "for the protection of the minor" is pure fiction.[2]

---

[1]Section 502 at the time of the *Espinoza* decision read: "The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental and physical welfare of the minor and the best interests of the State; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety and protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes."

[2]Whatever the validity of that belief in 1966 when the *Espinoza* opinion was filed, it is certainly true today. Under today's procedure, cases in the juvenile court are captioned "The People v. (the minor)." We do not feel compelled, however, in this case to

That court also refused to make any distinction between cases of dependent children (then covered by §§ 600 and 601, now § 300 of the Welf. & Inst. Code) where parental fault is generally involved, and cases where the minor has committed a crime and is thus within the purview of section 602 by suggesting (1) the possibility of parental failure as a cause of the minor's criminal conduct in which case, according to the *Espinoza* court, excusing the parents of responsibility for support would be unconscionable, and (2) the probability that excusing the parent of financial responsibility might impair the rehabilitation process when the minor was ultimately returned to the family home.

Present Welfare and Institutions Code section 202 was added in 1976 to replace former section 502. It embodies the identical language of the former section and adds as additional purposes "To protect the public from criminal conduct by minors" and "to impose on the minor a sense of responsibility for his own acts."

That enactment would appear to undercut, at least to a degree, the validity of the *Espinoza* rationale. In any event, however, we fail to see how that rationale can justify the imposition of liability on the parent of a child against whom the evidence is insufficient to establish that he in fact committed any crime—the only basis for wardship in this case.

We conclude that when the state interferes in the parent-child relationship to the extent of placing the minor in involuntary custody, pending the determination of whether the minor is a person coming within the provisions of Welfare and Institutions Code section 602, and the evidence fails to establish that the minor is in fact such a person, the detention serves *only* the purposes of society.

In such a situation the holding in *Hawley, supra,* 59 Cal.2d 247, in our opinion, mandates the conclusion that the parental duty of support is not a basis for requiring the parent to reimburse the state (county) for the cost of maintaining the minor in involuntary custody. To do so is to deprive the parent of his or her property without due process of law.

---

address the broader question of whether that change in philosophy and approach results in a denial of equal protection of the law when neither the individual nor his family is required to pay for the cost of detaining him as a result of adult criminal proceedings against him while in the case of a juvenile similarly situated, the duty does exist.

Because of the view we have adopted it is not necessary to discuss Susan's other contentions concerning the form of notice and hearing.

The order of the juvenile court directing Susan K. to pay $645.24 to the county is vacated.

Fleming, Acting P. J., and Beach, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 23, 1980.