[Civ. No. 60832. Second Dist., Div. Two. Aug. 17, 1981.]

In re STEVEN S., a Person Coming Under the Juvenile Court Law. COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. LEROY S., Defendant and Appellant.

**COUNSEL**

Shan K. Thever, under appointment by the Court of Appeal, for Defendant and Appellant.

John H. Larson, County Counsel, and Robin A. Ruffra, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—On January 18, 1979, the minor herein was declared a ward of the juvenile court pursuant to section 602 of the Welfare and Institutions Code. On June 23, 1980, a hearing was held to consider re-

imbursement by appellant as the minor's father of the costs of maintaining the juvenile in various county facilities. (See Welf. & Inst. Code, § 900 et seq.) As of the latter date, these costs were claimed by respondent county to aggregate nearly $33,000, and would, according to respondent, continue to accumulate at $2,460 per month.

On respondent's recommendation at the hearing, the aggregate amount owing was reduced to approximately $6,200; the ongoing charges to $280 per month. Appellant was ordered to repay these amounts at a rate of $25 per month from August 1980 to January 1981, and thereafter at a rate of $50 per month.

The appeal is from that order. We affirm.

■ It is urged initially that the statute imposing parental liability for reimbursement, Welfare and Institutions Code section 903,[1] is violative of the equal protection provisions of the state and federal Constitutions. The claim of unconstitutionality is made in spite of the fact that contention was earlier rejected in *County of Alameda* v. *Espinoza* (1966) 243 Cal.App.2d 534 [52 Cal.Rptr. 480], based upon certain language found in the recent decision of this court in *In re Gregory K.* (1980) 106 Cal.App.3d 164 [165 Cal.Rptr. 35]. In the latter case, the question, "Is it constitutionally permissible for a juvenile court to order the parents of a minor child to pay the costs of maintaining the minor in a county detention facility when the minor was placed in such facility pursuant to a petition for wardship which was subsequently dismissed for lack of sufficient evidence?" was answered in the negative. In the course of the opinion, it was ruminated that to the extent the result in *Espinoza* depended upon the notion that juvenile court proceedings under Welfare and Institutions Code section 602 are not essentially criminal in nature, the rationale of that case had been at least undercut by subsequent statutory amendments which tend to indicate the contrary. (See Welf. & Inst. Code, § 202.) It was likewise clearly pointed out, however, that the result in *Gregory* was confined to

---

[1]The statute provides: "The father, mother, spouse, or other person liable for the support of a minor person, the estates of such persons, and the estate of such minor person, shall be liable for the cost of his care, support, and maintenance in any county institution in which he is placed, detained, or committed pursuant to the order of the juvenile court, or for the cost to the county in which the juvenile court making the order is located, of his care, support, and maintenance in any other place in which he is placed, detained, or committed pursuant to the order of the juvenile court. The liability of such persons (in this article called relatives) and estates shall be a joint and several liability."

its own facts and that the broader question present here was not being addressed. (*In re Gregory K., supra*, 106 Cal.App.3d 164, 168-169, fn. 2.)

The question remains, therefore, whether under the facts now before us, section 903 is constitutionally defective in the manner previously set out or, perhaps more precisely, whether there is at this time reason for departing from the result reached in *Espinoza.* We conclude that, quite apart from any consideration of the nature of juvenile court proceedings under Welfare and Institutions Code section 602, *Espinoza* is properly understood as confirming the validity of section 903 of that code, based upon common law requirements related to support obligations.

Thus, in *In re Ricky H.* (1970) 2 Cal.3d 513 [86 Cal.Rptr. 76, 468 P.2d 204], a case involving the validity of Welfare and Institutions Code section 903.1[2] in terms of the same constitutional objection raised here, it was observed that: "[*Department of Mental Hygiene* v.] *Hawley* [59 Cal.2d 247] involved the liability of a father for the care of his insane adult son, who had been charged with the murder of his mother, and [*Department of Mental Hygiene* v.] *Kirchner* [60 Cal.2d 716, remanded 380 U.S. 194 subsequent opinion 62 Cal.2d 586] involved the liability of a daughter for the care of her mentally ill mother. Neither case concerned the discharge of common law support obligations, since 'At common law there was no liablity on a child to support parents, or on parents to support an adult child. [Citations.]' (*Department of Mental Hygiene v. Kirchner, supra*, 60 Cal.2d 716, 718, fn. 4.)

"The instant case, on the other hand, presents questions regarding the extent of the parents' obligation to support their minor children, an obligation which did exist at common law. (See Civ. Code, §§ 196, 206, 207, 246, 248; 37 Cal.Jur.2d, Parent and Child, § 19, p. 165; 39 Am. Jur., Parent and Child, § 35, pp. 630-631.)

"Several recent cases have distinguished *Hawley* and *Kirchner* on the ground that those cases did not involve common law support obligations. (*In re Shaieb*, 250 Cal.App.2d 553, 557-558 . . . [parent-minor

---

[2]The statute provides: "The father, mother, spouse, or other person liable for the support of a minor person, the estates of such persons, and the estate of such minor person, shall be liable for the cost to the county of legal services rendered to the minor by the public defender pursuant to the order of the juvenile court, or for the cost to the county for the legal services rendered to the minor by private attorney appointed pursuant to the order of the juvenile court. The liability of such persons (in this article called relatives) and estate shall be a joint and several liability."

child]; *Department of Mental Hygiene* v. *Kolts*, 247 Cal.App.2d 154, 157, 163 . . . [husband-wife]; *Dept. of Mental Hygiene* v. *O'Connor*, 246 Cal.App.2d 24, 27-29 . . . [husband-wife]; *County of Alameda* v. *Espinoza, supra*, 243 Cal.App.2d 534, 541-544 [parent-minor child]; *In re Dudley*, 239 Cal.App.2d 401, 408-409 . . . [parent-minor child]; *County of Alameda* v. *Kaiser, supra*, 238 Cal.App.2d 815, 818 [parent-minor child].) The *Espinoza* and *Shaieb* cases, *supra*, upheld the validity of section 903 of the Welfare and Institutions Code, which obligates the parents, spouse, or other person liable for the minor's support, to reimburse the county for the cost of supporting the minor in county facilities pursuant to juvenile court law.

"Therefore, if the expenses incurred in procuring counsel to represent the minor in juvenile court proceedings are properly chargeable to the parents as an element of their preexisting support obligation, the reasoning of the foregoing cases should apply, and section 903.1 should be upheld." (*Id.*, at p. 520.)

It was then concluded that: "[S]ection 903.1 is merely declarative of the parents' preexisting obligation to provide reasonable and necessary support to their minor children, and to reimburse third persons providing that support upon the parents' failure to do so. (See Civ. Code, §§ 207, 248.) Consequently, the imposition of liability for counsel fees under section 903.1 cannot be characterized as arbitrary or a denial of equal protection of the laws." (*Ibid.*, at p. 521.)

In our view, if section 903.1 is valid based upon the fact of a preexisting parental support obligation, a fortiori is that the case respecting section 903.

■ Finally, it is contended the trial court herein abused its discretion in failing before entering judgment to adequately investigate and determine the financial status of appellant and his ability to reimburse respondent. On this point it is enough to say the record is sufficiently clear no claim was made that appellant was unable to effect reimbursement and that the only question raised was the rate at which such reimbursement should occur.[3]

---

[3]At the hearing on respondent's petition, where appellant was represented by his wife, the minor's stepmother, after receiving the wife's waiver of counsel, the trial court was advised by the attorney for respondent that:

"The county is requesting reimbursement in the amount of $32,898.35 charges

The order appealed from is affirmed.

Fleming, J., concurred.

**COMPTON, J.,** Dissenting.—In the case of *In re Gregory K.* (1980) 106 Cal.App.3d 164 [165 Cal.Rptr. 35], we recognized the existence of, but did not address, the question of the constitutionality of requiring a parent to pay for maintenance of a minor child when that child, because of criminal conduct, has been removed from the family home and placed in a public facility.

In my opinion the time is ripe to face the problem and declare that such procedure cannot be constitutionally justified.

In other words, the time has arrived to recognize that proceedings under Welfare and Institutions Code section 602 to declare a minor a ward of the juvenile court because the minor has offended the penal statutes, for all practical purposes, serves the identical objectives of adult criminal proceedings. What differences do exist inhere in certain procedural steps and dispositional alternatives. The societal objectives of segregation, punishment and rehabilitation are identical.

None of these societal objectives require for their attainment, the punishment of the parents of the malefactor or the imposition on the parents of an obligation to contribute to the maintenance of public facilities greater than the obligation they share with all other taxpayers.

To view the obligations imposed by Welfare and Institutions Code section 903 as an extension of the common law duty of support is pure sophistry. There is no evidence that the parents here are not willing or that they have failed to provide shelter and sustenance to the minor. The plain fact is that society for *its* best interests has undertaken to

---

through May 30th of 1980.

"County is also requesting ongoing charges of $2,460 per month.

"I have a financial statement here prepared and signed by the stepmother on behalf of the father for the Court's review and consideration to adjust the outstanding balance to reduce it to the sum of $6,211.36 as being the total amount due through May 30th of 1980, also to set the ongoing charges, the future charges at the rate of $9.33 per day, or $280 per month so long as the minor is in placement.

"I've discussed the obligation with the stepmother. She has acknowledged on behalf of the father the indebtedness, and they request a reimbursement rate of $25.00 per month commencing August 10th to be automatically increased to $50.00 per month January 10th of 1980, Your Honor."

The order appealed from was immediately thereafter made, without objection.

provide maintenance for the minor away from the family home. Only adherence to the now-discredited notion that all juvenile delinquency is the fault of the parents can justify penalizing the parents in such fashion. I can see no basis for making the liability of the parents to make reimbursement turn on the irrelevant point of whether the minor was handled by the juvenile court or the regular criminal court.

The statute under consideration in effect creates four classes of parents of children who commit crimes. They are:

(1)  Parents whose minor children are processed in the adult court;

(2)  Parents whose minor children are processed in the juvenile court;

(3)  Parents in class 2 who do not have the ability to pay and;

(4)  Parents in class 2 who have the ability to pay.

Only class 4 parents are subjected to the additional burden imposed by Welfare and Institutions Code section 903. I can find no constitutional justification for singling out that class of parents for special treatment.

The citizenry pays taxes to build and maintain facilities for the confining of both adults and juveniles who engage in antisocial behavior. It appears to be a fact of life that the great majority of the occupants of these facilities come from the lower economic levels of society and it can be assumed that the parents of those individuals are likewise people of limited resources.

From that, one can extrapolate that class 4 parents comprise a very small percentage of the persons in all four classes and that class 4 is the smallest group of the four. Yet that is the only group singled out for payment. This constitutes "reverse discrimination," if you will, against persons on the basis of affluence. Further the more affluent the parents, the greater the amount of tax money they have probably already contributed to the cost of operating the facility.

I would, on the basis of the rationale in *Dept. of Mental Hygiene* v. *Hawley* (1963) 59 Cal.2d 247 [28 Cal.Rptr. 718, 379 P.2d 22], and *Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716 [36 Cal.

Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353], declare Welfare and Institutions Code section 903 unconstitutional, as a violation of due process of law and a denial of equal protection of the law.

Appellant's petition for a hearing by the Supreme Court was denied October 14, 1981.