# Richmond

## DR. RUSSELL BUXTON, DEVISEE, ETC. v. CHARLES R. BISHOP.

April 22, 1946.

Record No. 3034.

Present, All the Justices.

The opinion states the case.

*John P. McGuire, Jr.*, and *McGuire, Riely, Eggleston & Bocock*, for the plaintiff in error.

*William Old*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Dr. Russell Buxton, devisee under the will of Joseph T. Buxton, operating the Elizabeth Buxton Hospital, instituted an action at law against Charles R. Bishop for hospital services rendered Charles R. Bishop, Jr., during his last illness. All matters of law and fact, by agreement of the parties, were submitted to the trial court without the intervention of a jury, and it found in favor of the defendant and dismissed the plaintiff's action.

Only two witnesses testified at the trial, one for the plaintiff, and the other the defendant himself. There is little or no conflict in the testimony. Mrs. R. L. Smith, a witness for the plaintiff, testified that she was the bookkeeper and office manager of the Elizabeth Buxton Hospital at Newport News, Virginia; that Charles Robert Bishop, Jr., the son of

the defendant, was admitted to the hospital on August 5, 1942, suffering from an attack of acute appendicitis, was operated on that night, and remained in the hospital until his death on September 20, 1942. She introduced the hospital records pertaining to this patient and a copy of the first bill sent by the hospital to the defendant for the services rendered his son. She further testified that on the last day the defendant was at the hospital she waited for him in the hall and spoke to him about the bill; that she told him the practice of the hospital was to ask for payment or that some arrangement for payment of all bills be made when the patient was discharged or died; that she did not wish to bother the defendant about the financial matters at that time; that she asked him for his address and told him that she would send him the bill; that he gave her his address and said, "all right, do so", or "all right, send me the bill"; that she does not remember the defendant's exact words and does not remember that he actually promised to pay the bill in so many words, but she made it clear to him that she was expecting him to pay the bill, and that he did not disclaim responsibility for the bill at that time. She further testified that a number of bills were subsequently sent to the defendant but he made no response.

The defendant testified in his own behalf that Charles R. Bishop, Jr., was his son, and that he was born on March 24, 1922. He further testified that Charles R. Bishop, Jr., had been working since he was seventeen years old; that for two years he worked for the DuPont Company at Ampthill on the Richmond-Petersburg turnpike, living at home during that time; that he then received his own wages; that he did not pay any regular board. but from time to time gave his mother money; that he had been living away from home working for a contractor at Oyster Point and at Yorktown for about a year before his death; that he came home about once a week; that he kept his own earnings, and the defendant had given him no money. The defendant further testified that he was not informed of his son's illness until after the operation had been performed, and that if he had

been informed beforehand he would not have had him taken to Newport News but would have brought him to Stuart Circle Hospital in Richmond. The defendant further testified that he was dissatisfied with the attention his son was receiving at the hospital and he employed outside physicians and nurses whom he paid himself. He further testified that he did not recall seeing Mrs. Smith, the bookkeeper, or holding any conversation with her, though he does not deny the conversation, but explains that he was very much upset on that day, having just been alone in the room with his son when he died. He disclaimed any responsibility for the bill, and said that when his son left home the defendant intended for the boy to have his own wages.

It is uncontradicted that at the time the defendant's son was admitted to the hospital he was over twenty years of age, but under twenty-one.

The plaintiff based his action upon the ground that the defendant, on the day he left the hospital, effectually promised to pay the bill and is therefore liable upon an express contract. He also contends that during the period of his son's illness the defendant accepted and acquiesced in the attention, treatment and services received by his son at the hands of the petitioner, and that the defendant is therefore liable upon an implied promise to pay the bill. Lastly, the plaintiff contends that the defendant is liable for the hospital services rendered his son because of the relationship of parent and child, and by virtue of the duty and obligation flowing therefrom, the law imposes upon him the duty to care for and furnish necessities to his infant son, including hospital and medical services.

The only evidence which the plaintiff contends supports a contract either express or implied between the defendant and the hospital is that of the witness, Mrs. Smith. Other than her statement to him that she would send him a bill, and his reply, "to do so", there is no evidence of a contract. Her testimony to the effect that she told the defendant that she would send him a bill and his reply telling her to do so does not show, in our opinion, that the defen-

dant agreed to pay the bill. When the bill was sent it was made out to Mr. Charles Robert Bishop, Jr., deceased, and not to the defendant, and there was no statement on the bill that the plaintiff sought to hold the defendant liable for the account. The evidence tending to support any contract obligation either express or implied on the part of the father to pay the account is so slight that it amounts to no proof at all.

Was the defendant liable to the plaintiff by reason of the relationship of parent and child and the obligation flowing therefrom of the parent to supply his child with necessities?

The evidence disclosed that the son was over twenty years of age, and had been supporting himself for about three years. He worked away from home, drew his own wages, and spent them as he alone desired. Under these circumstances it is reasonably certain that the defendant could not have successfully proceeded against his son's employer or employers for the son's wages.

It appears from one of the exhibits that Charles R. Bishop, Jr., the son, actually paid the hospital, from his own hospital insurance funds, $143.75. Credit for this amount is shown on plaintiff's exhibit No. 2, which was the account rendered to Mr. Charles Robert Bishop, Jr., deceased.

Our conclusion is that at the time Charles R. Bishop, Jr., entered the hospital he was an emancipated youth, earning his own wages and providing for himself the necessities of life, including hospital services.

We have no case in Virginia directly in point. There are many cases from other jurisdictions, and text-writers have treated the subject. The clearest and most comprehensive treatment we have found on the subject of the emancipation of a child is in 39 Am. Jur., Parent and Child, Emancipation, sec. 64.

In Williston on Contracts, Vol. 1, sec. 225, at page 674, in speaking of the kind of emancipation which is involved in the present case, the distinguished author says:

"Such emancipation may be by express agreement or may be shown by the circumstances of the case. Thus if,

with his parents' express or implied consent, a minor makes a contract for his services under which he is personally to receive the benefits of the contract, he is thereby emancipated. * * * "

A host of cases are cited to support the text.

The legal principle established by the foregoing authorities, when applied to the facts of the present case, compel the conclusion that the son of the defendant was emancipated at the time he became a patient at the hospital of the plaintiff.

To hold, under the facts in this case, that the son of the defendant was not an emancipated youth at the time he entered the hospital would be very disconcerting to many employers and employees, for there are a large number of employees in Virginia under twenty-one years of age working under contracts of employment made between themselves and their employers personally. They are paid their wages, which they spend as they please. They receive no support from their parents and ask none. They not only take care of themselves but frequently take care of their parents. If they are not emancipated, then their parents are entitled to their wages. The result, in effect, would not only largely destroy the incentive for this class of work, but it would place a decided burden upon the employers. They would, at their own risk, pay wages to the employees, never knowing when they might have to pay the same wages again to the parents of such employees.

The judgment is affirmed.

*Affirmed.*