[Civ. No. 22284. Second Dist., Div. One. Dec. 30, 1957.]

Estate of GERTRUDE F. RISSE, an Incompetent Person. HENRY RISSE, Appellant, v. DEPARTMENT OF MENTAL HYGIENE, etc., Respondent.

Louis A. Audet for Appellant.

Edmund G. Brown, Attorney General, James D. Loebl and Ariel Hilton, Deputy Attorneys General, for Respondent.

FOURT, J.—This is an appeal from a decree which disallowed the petition for approval of the guardian's account, report, petition to sign note, to fix attorney's fees and for discharge of guardian and his surety.

Henry Risse and Gertrude F. Risse were married in Germany, August 8, 1931, and ever since said time have been, and now are, husband and wife. They moved to Los Angeles, and with earnings acquired after their marriage purchased improved real property located at 2337 Wall Street, Los Angeles, which, until its sale in 1955, was the family home.

On May 21, 1943, Gertrude F. Risse, sometimes hereinafter referred to as "the wife," was adjudged insane or mentally ill and was committed to the Camarillo State Hospital, where she has been in residence as a patient ever since, with the exception of two days' leave at Christmas time in 1943, and of about nine days' leave during July in 1955.

On April 12, 1947, Henry Risse, sometimes hereinafter referred to as "the husband," petitioned the court to become the guardian of his wife's estate, alleging that she had no relatives within the second degree residing in this state, and that she had an estate consisting of a community interest in the real property heretofore mentioned. On April 23, 1947, the husband was appointed the guardian of the estate of his wife, with surety bond set at $2,000. On May 27, 1947, an inventory and appraisement was filed in the proceedings showing an appraisal of the wife's one-half interest in the property at $5,000, with no other assets listed. On the same date, the husband's petition for an order to sell community property under section 1435, Probate Code, was filed and the hearing was set for June 27, 1947. The petition set forth, among other things, that the husband was 44 years of age, the wife 37 years of age; that the property had been the family home; that it was acquired with his earnings since marriage. Petitioner further set forth, "That it is to the advantage, benefit and interest of the petitioner, as spouse of said Gertrude F. Risse, incompetent, . . . to sell the aforesaid property during the present inflated market for real estate in order to realize the greatest profit possible to provide funds for the care and support of petitioner and his wife, the said Gertrude F. Risse, incompetent." Further, "That as a separate and further reason for the sale of said property your petitioner alleges that he is residing on aforesaid property and that the character of the neighborhood where said property is located has changed from a white residential district

to a semi-commercial and colored residential district, where a substantial number of the colored neighbors resent your petitioner's residence in said locality and that it would be for the best interest of your petitioner's peace and comfort to ultimately obtain a home in a white district with the proceeds of the sale of the aforesaid property.''

The prayer in the petition requested that the matter be set for hearing; that notice be given; that the court declare the property to be the community property of the husband and wife; that an order be made permitting petitioner to sell the property, subject to report and return to, and confirmation by the court, and for such other orders as might be proper. On July 1, 1947, the court ordered and decreed that the property was the community property of the husband and wife; that she was incompetent; that petitioner be permitted to sell he property; that any such sale be returned and reported to the court for confirmation.

About eight years later, on April 11, 1955, an inventory and appraisement (second re-appraisement) was filed, showing the wife's one-half community property interest to be valued at $5,750. On August 3, 1955, an order confirming sale of property, and authorizing conveyance (incompetent spouse) was made. The sale of the house was made for the price of $11,500, payable $2,000 cash, the balance in installments of $95 per month, beginning July 15, 1955; the balance was evidenced by a promissory note secured by a first deed of trust on the property. No broker's commission was involved, and an additional surety bond of $4,000 was required.

The husband filed his first and final account, report, petition to assign the note, petition to fix attorney's fees and petition for discharge of guardian and his surety. The Department of Mental Hygiene, hereinafter referred to as ''Department,'' on November 22, 1955, filed objections to the petition, and requested an order directing payment of board, care and maintenance of the wife at Camarillo Hospital (Welf. & Inst. Code, § 6650).

The husband, in the first account, had attempted to charge the estate of the wife with the total expense of her care at Camarillo State Hospital, and transportation thereto, from 1943 to 1955, in the sum of $5,686.50. On November 15, 1955, the husband filed an amended first and final account, report, petition to assign note, to fix attorney's fees, and for discharge of himself and surety, in which he charged himself with the receipt of $5,750, and asked credits of $40 per month

paid to Camarillo State Hospital for five months in 1947, for the seven years from 1948 through 1954, and for the first seven months of 1955. Credit for two months at $80 per month, starting August 1, 1955, was also requested, or a total of $4,000 paid to Camarillo State Hospital. An additional amount of $800 for clothing purchased for the wife from 1947 through September, 1955, was requested, together with one-half of the cost of a fence, in 1948, a roof in 1954 and county property taxes for 1952, 1953 and 1954, in the total amount of $378.85. Credit of $193.65, for expenses of administration, and one-half of the escrow cost was asked for, together with $465 attorney's fees. The total credits asked for of $5,837.50, if approved, would leave a deficit of $87.50 in the wife's share of the community property, including $365 due on attorney's fees, which the husband stated he would pay from his own funds.

The husband set forth that because he had advanced for the wife's benefit an amount in excess of the total charges against him, he should have assigned to him by way of reimbursement for his advances the wife's interest in the promissory note. He also set forth that but for his contributions from his own funds to pay attorney's fees and other expenses, the estate of the wife would be insolvent.

On December 7, 1955, in a hearing before Judge Daniels, the amended account and petition was heard. By minute order, the judge settled the amended account as prayed for, granted the attorney's fees as requested, and granted the assignment of the note to the husband. The objections of the Department were overruled.

On December 22, 1955, a hearing was had upon a motion of the Department, in effect asking for a new trial. It was pointed out by the Department that the court, in the first instance, had neglected to take any evidence to show that the husband was unable to contribute to his wife's support. Further, it was pointed out that the funds in question were not subject to the husband's management and control, but under section 1435.28, Probate Code, could be applied only as the court, by order, might direct, and that no such order had been requested or made; that the property, under the circumstances, was not subject to the husband's management and control. The motion to vacate and set aside the orders was granted on December 29, 1955, by Judge Daniels.

Thereafter, on February 14, 1956, the amended first account, report and petitions, together with the objections of the

Department came on to be heard before Judge Schweitzer. Evidence was introduced and the court made findings of fact and conclusions of law on March 16, 1956, together with its order.

The court found as true that the husband was the guardian of the wife, that the wife had been hospitalized, as heretofore set forth, and further found as true that the husband attempted to charge to the wife's community interest in the estate the entire cost of the care, support and maintenance of the wife at Camarillo State Hospital for a total of $5,686.50; that the sums due had been paid by the husband as they came due each month, for which he was demanding reimbursement out of her one-half of the community property which had been sold. Further, it was found that the husband had filed an amended first account and petitions, etc., alleging that the assets of the wife's estate were $5,750; that the husband sought $4,000 representing the cost of the care for the wife at the Camarillo State Hospital from August, 1947, to September, 1955. There were further findings that nowhere had the husband alleged that he was unable to pay for the care, support and maintenance of the wife, and that he was capable of paying, and did pay for her care, support and maintenance.

As a conclusion of law, the court determined that the husband was not entitled to a credit from the estate of the wife for the sum expended by him for her care at the hospital; that the husband was at all times capable of supporting his wife; that he had the duty to furnish her care, support and maintenance; and disallowed the amended first account as well as the petition to assign the promissory note to him. An order and decree in conformity with the findings of fact and conclusions of law was made.

Appellant contends (1) that it was error for the court to disallow the amended first and final account; (2) that the findings of fact are not supported by the record, and that the conclusions of law are not supported by the findings of fact or the record, and (3) that it was error to grant respondents' motion for a new trial.

There is no contention upon the part of the husband that he was in anywise dependent upon the wife for his support and maintenance, and neither is there any contention that he was unable, unassisted, to support and maintain his wife in her illness.

The property in the present case was admittedly community

property, and therefore as such, "The husband has the management and control of the community real property, but the wife, either personally or by duly authorized agent, must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; . . ." (Civ. Code, § 172a). Had the wife been competent, she would have had to join with her husband in order for him to sell their home. "The purpose of section 172a was to give a wife a veto power over conveyances of community property disadvantageous to her (*Stewart* v. *Stewart, supra* [199 Cal. 318 (249 P. 197)]) and since she can exercise this power effectively by refusing to sign the deed, there is no need for more elaborate procedure." (*Strong* v. *Strong*, 22 Cal.2d 540, 544 [140 P.2d 386].) In *Stewart* v. *Stewart*, 199 Cal. 318, at pages 342-343 [249 P.2d 197], the court said, among other things, "We wish to say in conclusion that we are in accord with the intimations from time to time reflected by this court in the long line of its past decisions to the effect that the interest of the wife in the property of the community during the continuance of the marriage relation while it has not yet reached the status of a vested interest therein, is and has always been from a time reaching back into the Spanish and Mexican originals of our community property laws a much more definite and present interest than is that of an ordinary heir. She has, by virtue of the share which in her own sphere she has contributed toward the acquisition and conservation of such properties, rights therein which have been always safeguarded against the fraudulent or inconsiderate acts of her husband with relation thereto and for the assertion and safeguarding of which she has been given access to appropriate judicial remedies both before and after the time when her said rights and interests would ripen and become vested through the death of the husband or other severance of the marriage relation whenever such rights and ultimate interests were affected by or threatened with such forms of invasion."

 In other words, the share of the wife in the community realty has always been safeguarded against fraudulent and inconsiderate acts of the husband, and when she cannot safeguard that interest by the exercise of her own influence over the husband's decision or by her refusal to join in the making of the conveyance, the law has devised a procedure to substitute the court's discretion for that of the incompetent wife,

and by means thereof to permit the competent spouse to deal effectively with the real property. The procedure is presently set forth in sections 1435.1-1435.39, Probate Code.

At the time the appellant petitioned the court as guardian for an order to sell the community real property, the procedure was found in sections 1435-1435.10, Probate Code, repealed by Statutes of 1947. The property was not sold until eight years later.

Section 1435, Probate Code, added by Statutes of 1941, was in effect May 27, 1947, the time the petition was filed, and provided, among other things, for a petition to the superior court where money was needed for the care or support of either spouse. Probate Code, section 1435.9, then read:

"A petitioning spouse must, before executing any conveyance, mortgage, or deed of trust, give a bond to be approved by the judge of the court, in double the amount of the mortgage or deed of trust, or double the value of the property to be sold or exchanged, conditioned to account for the proceeds of the mortgage, deed of trust, exchange, sale or transaction, and to apply such proceeds only as the court may direct."

Before 1941, substantially the same procedure was provided for in Civil Code, sections 172b-172d and 1269a-1269c.

Section 1435.28, Probate Code, enacted in 1947, and providing the present procedure, requires that the proceeds from the sale be applied only as the court may order. In short, the husband must show the court that there is good and proper reason for the sale, that the consideration is adequate, the security good for the full payment if part-payment is accepted, and that the wife's interests in the proceeds will be protected and not dissipated. (See *Fields* v. *Michael,* 91 Cal.App.2d 443 [205 P.2d 402] ; *Schindler* v. *Schindler,* 126 Cal.App.2d 597, 603 [272 P.2d 566] ; *Dandini* v. *Dandini,* 120 Cal.App.2d 211 [260 P.2d 1033] ; *People* v. *Schlette,* 139 Cal.App.2d 165, 166 [293 P.2d 79].)

In essence, the appellant in this case is requesting the court to award to him personally the wife's entire share in the community realty to reimburse him for money which he expended for her support and maintenance for the eight years prior to the sale.

In our opinion, the Department of Mental Hygiene acted promptly and properly in this matter in attempting to protect the interest of the incompetent wife.

In *Guardianship of Thrasher,* 105 Cal.App.2d 768 [234 P.2d 230], the husband, as guardian of the incompetent wife,

claimed allowances from her property for her support and
maintenance while the wife was committed to the Stockton
State Hospital. The original record in that case discloses that
Thrasher himself admitted that the major asset was the com-
munity property of himself and his wife. The appellant
Department of Mental Hygiene, in the Thrasher case, stated
that the question to be determined was (page 771) : ''Whether
the husband who is providing for the care and maintenance
of an incompetent wife committed to a state hospital, may,
as guardian of her estate, approve claims for this support,
submitted by himself as husband to himself as guardian,
thereby charging her estate for her care, and avoiding his own
statutory liability as husband for the support of his wife.''

The court in the Thrasher case then stated (pp. 771-
778) :

''We deem it proper to state at the outset that it is not
only the right, but it is the duty, of the department to safe-
guard the welfare of an incompetent person committed to its
care. This duty has been aptly expressed in the *Estate of
O'Donnell,* 85 Cal.App.2d 1 [192 P.2d 94] . . . (hearing by
Supreme Court denied), in which, on an appeal by the depart-
ment, the appellate court ordered that an allowance of $4,000
to an heir-hunting bureau be stricken from the order of the
probate court.

. . . . . . . . .

''In an annotation in 18 American Law Reports 1131,
it is stated that the general rule is that the primary duty
of support of the wife and family rests upon the husband, and
he is not relieved of that duty merely because the wife may
have a separate estate or means of her own available for her
support. Cited in said annotation are *Meyer's Estate,* Myrick,
Probate Court Report 178, and *Shebley* v. *Peters,* 53 Cal.App.
288 [200 P. 364]. . . .

''In *Meyer's Estate,* the husband applied for an order on
the guardian of the wife, who was insane, to refund out of
her estate the amount which he had expended for her support,
since she had a large estate, although he was also wealthy.
The court, in denying the application, said: 'It is the duty
of the husband to maintain the wife, whether she be sane or
insane; and while he has the ability so to do, resort cannot
be had to her estate.'

''In *Shebley* v. *Peters, supra,* which was an action for death
of a husband and father, the Supreme Court, in denying a
hearing, said at page 293: 'Such support it is the right of

every wife and minor child to receive from the husband and father, even if they are not dependent upon him at all, but have ample means of their own.'

"And in *Davis* v. *Davis*, 65 Cal.App. 499 [224 P. 478] . . ., the court said at page 501: 'It is the law that every wife is entitled to demand of her husband a support in accordance with his station in life, even if she be not dependent upon him at all and although she has ample means of her own.'

. . . . . . . . . .

". . . All of the statutory provisions in all of the codes must be read together and harmonized if possible. ■■ As stated in *In re Porterfield*, 28 Cal.2d 91, at page 100 [168 P.2d 706, 167 A.L.R. 675] . . .: 'It is a well-recognized rule that for purposes of statutory construction the codes are to be regarded as blending into each other and constituting but a single statute. [Citing cases.]'

■■ "As we have hereinbefore pointed out, it is the undoubted duty of the husband to support his wife even though she has estate of her own. ■■ This obligation does not cease when she is adjudged insane or when a guardian of her estate is appointed. Section 1505 of the Probate Code specifically provides that if a husband is unable to provide for the maintenance of a wife over whose estate a guardian has been appointed by reason of her incompetency, the expense of her maintenance may to the extent necessary be defrayed out of the guardianship estate. Section 6650 of the Welfare and Institutions Code provides that the husband, wife, father, mother, or children of a mentally ill person, or the guardian of his or her estate, shall be jointly and severally liable for the maintenance of such person in the state institution. Section 6655 provides that if any person committed to a state mental hospital has sufficient estate to pay for his maintenance the guardian shall pay for such maintenance to the extent of the estate; and said section provides further that payment shall not be exacted if there is likelihood of patient's release from the hospital and the payment will reduce his estate to the extent that he will become a burden upon the community, and also that if the medical department certifies that the patient is not likely to recover or be released from the hospital, the guardian shall pay for his maintenance at the hospital out of his estate.

■■ ". . . We do not believe that it was the intention of the Legislature to overrule or ignore the provision of the Civil Code establishing the fundamental rights and duties of

marriage, the provisions of the Probate Code establishing the rights of wards and the duties of their guardians to protect their interests, the provision of the Welfare and Institutions Code establishing various sources from which the state may secure payment of the hospital care for incompetents, and look only to one section of the Welfare and Institutions Code as providing the one source from which an incompetent's care may be paid.

. . . . . . . . . .

██ "We believe that the reasonable and proper construction of all of the applicable sections is that the husband of a wife who has been committed to a mental institution is primarily liable for her maintenance there to the extent of his financial ability to pay for it; that if she has estate over which a guardian is appointed, he may not draw upon such estate for her maintenance so long as he has the financial ability to pay for same; that it is not only the right but it is the duty of the Department of Mental Hygiene to protect and preserve the estate of a person legally committed to its care; that the Welfare and Institutions Code provides the means and method by which the state may receive payment from the insane person's estate, but this in no way releases the husband from his primary obligation, nor does it prevent the department from making proper objections in the guardianship proceeding to the shifting of said obligation to the guardianship estate."

Under the circumstances of the present case, the judgment is affirmed.

White, P. J., and Drapeau, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.