[Civ. No. 23089.   First Dist., Div. Three.   Dec. 17, 1965.]

COUNTY OF ALAMEDA, Plaintiff and Appellant, v. EMMA A. KAISER, Defendant and Respondent.

J. F. Coakley, District Attorney, Ben H. Zuppan and William A. Hirst, Deputy District Attorneys, for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Elizabeth Palmer, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Smith, Parrish, Paduck & Clancy and Phillip J. Smith for Defendant and Respondent.

DRAPER, P. J.—Does "emancipation" of a minor by agreement with his mother relieve her of liability for his support? Does a recent decision (*Department of Mental Hygiene* v. *Kirchner*, 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720]) bar recovery from her by the county for his treat-

ment, in a county hospital, for physical ailments? These are the questions on this appeal.

Defendant, a widow, is the mother of Philip Kaiser, who was born August 3, 1942. He was seriously injured in an automobile accident August 13, 1962, and was treated for some time in a private hospital. On November 28, 1962, defendant made written application for county medical care for her son, representing that she had very little money or property. The next day, Philip was admitted to the county hospital, and remained hospitalized through March 28, 1963. Shortly after his admission, county officials learned that defendant had withdrawn a large amount from a bank account not listed in her financial statement. The board of supervisors then determined that defendant had financial ability to support her son (Welf. & Inst. Code, § 2576), and this action for $3,172.50 was filed in the municipal court.

At trial, defendant testified that Philip had left home in February 1962 and had resided with an aunt to the time of his injury. He had some employment while living with the aunt, but the record does not show the amount of his earnings or whether he paid the aunt for board or room. His mother had neither contributed to his support nor asked for any part of his earnings, and testified "He was living on his own, apart, permanently." The trial court concluded that the son had been "emancipated", and thus must be treated as an adult. On the theory that *Kirchner* barred recovery under these circumstances, judgment was entered for defendant. Hence, the evidence of defendant's financial ability is but sketchy. Plaintiff appealed. The appellate department expressed doubt as to the determination of "emancipation" but, assuming the son to be deemed an adult, held that *Kirchner* is inapplicable to treatment in a county hospital for physical ailments, and reversed the judgment. We accepted transfer on certification (Cal. Rules of Court, rules 62, 63).

The phrase "emancipation of a minor," as applied to agreements of parent and child, appears to have been rather loosely used. Frequently, emancipation of the minor is equated with release of the parent. (See cases collected at 165 A.L.R. 723-753; 1 Schouler, Marriage, Divorce, Separation and Domestic Relations (6th ed.) 897.) In the decisions, most such statements are but dicta as to the parent's obligation, but some do hold that consensual "emancipation" of the child terminates the

parent's liability (e.g. *Buxton* v. *Bishop,* 185 Va. 1 [37 S.E.2d 755, 165 A.L.R. 719]; *Brosius* v. *Barker,* 154 Mo.App. 657 [136 S.W. 18]; *Holland* v. *Hartley,* 171 N.C. 376 [88 S.E. 507]).

Broad statements of this assumed rule appear infrequently in California decisions (*Perkins* v. *Robertson,* 140 Cal.App. 2d 536, 540 [295 P.2d 972]; and see *Lackman* v. *Wood,* 25 Cal. 147, 151). But these cases dealt with relinquishment of the parent's rights — not with release from his liabilities.

▉ When the issue of the child's rights has been squarely presented, the California courts have held that "emancipation" by agreement does not terminate the right to support (*Federal Mutual Liability Ins. Co.* v. *Industrial Acc. Com.,* 195 Cal. 283 [233 P. 335]; *Argonaut Ins. Exchange* v. *Kates,* 137 Cal.App.2d 158 [289 P.2d 801]; *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.,* 81 Cal.App.2d 37 [183 P.2d 344]).

Logic and reason support this view. The term "emancipation" implies treatment of the individual as a chattel. Slavish adherence to definition of the word, perhaps carelessly adopted in the first place, has led some jurisdictions to infer that the obligations of the parent to his child are based wholly upon his right to the child's earnings, and that relinquishment of the right requires release from the liability. This "rule" has been contradicted or questioned by text writers (2 Armstrong, California Family Law, 1259-1260; Madden on Domestic Relations, 408-409; 5 Vernier, American Family Laws, 240). It seems apparent that the few decisions and the more frequent dicta relied upon by defendant mother confuse "emancipation" of the child with "emancipation" of the parent. The limitations upon the minor's right to make binding contracts with strangers emphasize the illogic of a rule that he may bind himself by a contractual release of his parent, the person most likely to have a strong influence upon him.

We conclude that Philip must be deemed a minor. ▉ Our question then is whether the recent ruling of our Supreme Court (*Department of Mental Hygiene* v. *Kirchner, supra,* 60 Cal.2d 716) bars liability of defendant mother.

Parental liability for support of a minor child is of ancient origin. It was recognized by such writers as Coke and Blackstone (1 Schouler, Marriage, Divorce, Separation and Domestic Relations, 857), and was the subject of an old English

statute (43 Eliz. I, c.2). It has long been statutory in California (Civ. Code, §§ 196, 206, 207). One reason for imposing this obligation is to prevent the child from becoming a public charge (*Federal Mutual Liability Ins. Co. v. Industrial Acc. Com., supra,* 195 Cal. 283, 289-290). This long-recognized liability, often enforced, has not been held to be based upon an unreasonable classification. Thus *Kirchner's* proscription of denial of equal protection seems to have no application.

The statutes measuring liability for care and treatment of another in a county hospital (Health & Saf. Code, § 1473; Welf. & Inst. Code, § 2576), permit recovery by the county only to the extent of the responsible party's ability to pay. To the extent that *Kirchner* turns upon possible impoverishment of the party charged for another's care, its rule is thus inapplicable here.

This case differs from *Kirchner* in another respect. Here, hospitalization was for treatment of physical injuries, a treatment essentially for the benefit of the patient. It was apparently considered beneficial by the mother who sought her child's admission to the county hospital. The element of confinement for the protection of society from the mentally ill, present in *Kirchner,* is not a factor here.

We conclude that there is no constitutional bar to the recovery here sought.

Judgment reversed. The case is remanded for trial of the issue of defendant's pecuniary ability to pay for or contribute to her son's care for which recovery is sought.

Salsman, J., and Devine, J., concurred.