[Civ. No. 30341. Second Dist., Div. One. Dec. 12, 1966.]

DEPARTMENT OF MENTAL HYGIENE, Plaintiff and Appellant, v. DONALD KOLTS, as Executor, etc., Defendant and Respondent.

---

*Assigned by the Chairman of the Judicial Council.

Thomas C. Lynch, Attorney General, Edward M. Belasco and William L. Zessar, Deputy Attorneys General, for Plaintiff and Appellant.

Chauncey G. Kolts for Defendant and Respondent.

LILLIE, J.—Under section 6650, Welfare and Institutions Code, the Department of Mental Hygiene of the State of California sued to recover from the estate of Carl B. Worthen, deceased, the sum of $12,622.30. Plaintiff appeals from order of dismissal after order sustaining demurrer without leave to amend on the ground that section 6650 is unconstitutional under the equal protection clause of the Constitution. (*Department of Mental Hygiene* v. *Kirchner,* 62 Cal.2d 586 [43 Cal. Rptr. 329, 400 P.2d 321]; 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720].)

Worthen was the husband of Harriet who, on November 5, 1917, was adjudged by the superior court to be an insane person and ordered committed to a state hospital where she has since remained. In the judgment and commitment entered November 5, 1917, Worthen was *not* ordered to pay for the care and support of his wife, but in Statement of Financial Ability[1] attached to the judgment the court found that Worthen was "financially able to pay for the support of said patient at the Hospital the sum of $15 per month";[2] after the judge's signature, appears the following: "I approve of the above charges and agree to pay same on demand. (Signature) Carl B. Worthen." Both section 2171, Political Code, and the judgment and commitment dispel any suggestion that the judge's finding of Worthen's ability to pay constituted a court order. Nothing more than a temporary finding of fact, it was subject to administrative modification without judicial proceeding. (*Estate of Setzer,* 192 Cal.App.2d 634, 640 [13 Cal.Rptr. 683].) Worthen died on April 22, 1965; he has never during his lifetime paid any sum for the care

---

[1]Required under section 2171, Political Code. Provision re Statement of Financial Liability later (1939) deleted from section 5100, Welfare and Institutions Code (formerly Pol. Code, § 2171).

[2]In 1917, section 2180, Political Code, provided the maximum amount chargeable to be $15 per month.

and treatment of Harriet E. Worthen. Statutory charges for her care, support and maintenance rendered at the state hospital during the four-year period immediately prior to Worthen's death total $12,622.30. A verified creditor's claim for said sum was served by plaintiff on defendant Kolts, executor of Worthen's estate; the same was rejected.

The sole issue is whether the liability of a husband under section 6650, Welfare and Institutions Code, for the care, support and maintenance given his incompetent wife in a state mental institution is barred by the equal protection clause of the Constitution.

"One of the basic duties and fundamental obligations of mankind recognized by the law is a man's obligation to support his wife." (*Klinker* v. *Klinker*, 132 Cal.App.2d 687, 697 [283 P.2d 83].) Throughout civilization the moral and legal rights and duties of support arising from the marriage relationship have been recognized, and at common law the primary liability of his wife's support was cast on the husband which "include[d] meals and a place for the wife to sleep, or a room to occupy" (*Nielsen* v. *Richards*, 75 Cal. App. 680, 685 [243 P. 697]) and medical treatment furnished her (*Harris* v. *Lee* (1718) 24 English Rptr. 482). In 1872 the common law was codified in California (Civ. Code, §§ 155, 174) and the husband's traditional obligation to support his wife was imposed by statute. The wife's right of support, whether at common law or by statute, arises from the marriage relation itself (*Hudson* v. *Hudson*, 52 Cal.2d 735, 743 [344 P.2d 295]; *Boyd* v. *Boyd*, 228 Cal.App.2d 374, 379 [39 Cal.Rptr. 400]; *Estate of Fawcett*, 232 Cal.App.2d 770, 777 [43 Cal.Rptr. 160]; *Remondino* v. *Remondino*, 41 Cal.App.2d 208, 213 [106 P.2d 437]; see also *Sharon* v. *Sharon*, 75 Cal. 1, 8 [16 P. 345]; *Maynard* v. *Hill*, 125 U.S. 190, 210 [31 L.Ed. 654, 8 S.Ct. 723]), and so important is the husband's liability therefor that "[t]he failure to meet that obligation is universally made a crime." (*Klinker* v. *Klinker*, 132 Cal.App.2d 687, 697 [283 P.2d 83].) Also in California, as well as in many other states, the wilful neglect by the husband is a ground for divorce. (Civ. Code, § 105; *Locke* v. *Locke*, 153 Cal. 56, 57 [94 P. 244].)

 The obligation of a man to support his wife extends through sickness, and even "[t]he fact that the wife is insane does not relieve the husband of that obligation" (*Klinker* v. *Klinker*, 132 Cal.App.2d 687, 697 [283 P.2d 83]; *St. Vincent's*

*Institution* v. *Davis,* 129 Cal. 20, 22 [61 P. 477]); this independent of statute, for at common law the husband was always liable to maintain his mentally incompetent wife. (*Cole* v. *Brown,* 2 Law Reports [King's Bench Div.] 301, 303-304.) However, in California a statute incorporating this liability exists in the form of section 6650, Welfare and Institutions Code: "The *husband,* wife, father, mother, or children *of a mentally ill person or* inebriate, *the estates of such persons,* and the guardian and administrator of the estate of such mentally ill person or inebriate, *shall cause him to be properly and suitably cared for and maintained, and shall pay the costs and charges of his transportation to a state institution for the mentally ill* or inebriates. *The husband,* wife, father, mother, or children of a mentally ill person or inebriate, *and the administrators of their estates,* and the estate of such mentally ill person or inebriate, *shall be liable for his care, support, and maintenance in a state institution of which he is a patient. . . ."* (Italics added.)[3] And while California permits divorce on the ground of insanity, the statute also provides, "No decree granted on this ground shall relieve the spouse granted the divorce of any obligation imposed by law as a result of the marriage for the support of the spouse against whom the divorce is granted, and the court may make such order for support, or require a bond therefor, as the circumstances require." (Civ. Code, § 108.)[4] (See also *Klinker* v. *Klinker,* 132 Cal.App.2d 687, 696 [283 P.2d 83].)

Unless *Guardianship of Thrasher* (1951) 105 Cal.App.2d 768 [234 P.2d 230], has been overruled by the California Supreme Court in *Department of Mental Hygiene* v. *Kirchner,* 62 Cal.2d 586 [43 Cal.Rptr. 329, 400 P.2d 321]; 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720], it is dispositive of the issue herein. Respondent contends that the court in *Kirchner* held that section 6650, Welfare and Institutions Code, violates the equal protection provision of the Constitution and that it is unconstitutional thereunder to compel any person to pay

[3] Other states have similar statutes—Alabama, Alaska, Arkansas, Colorado, Delaware, Idaho, Illinois, Indiana, Iowa, Kansas, Connecticut, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Jersey, New York, North Carolina, North Dakota, Ohio, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington.

[4] Other states have similar statutes—Arkansas, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Indiana, Kansas, Kentucky, Maryland, Minnesota, Mississippi, Montana, Nevada, New Mexico, North Carolina, Oklahoma, Oregon, Utah, Vermont and Wyoming.

for the care, maintenance and support furnished an incompetent relative in a state mental institution.

*Guardianship of Thrasher,* 105 Cal.App.2d 768 [234 P.2d 230], holds that the husband of an incompetent committed to a state mental institution has the duty to support her (Welf. & Inst. Code, § 6650) even though she has estate of her own. After following the history of section 6650 from 1937 (based on former Pol. Code, § 2176) and reading together all of the statutory provisions in all of the codes relative to the obligation of a husband to support his wife, the court said: ''As we have hereinbefore pointed out, it is the undoubted duty of the husband to support his wife even though she has estate of her own. This obligation does not cease when she is adjudged insane or when a guardian of her estate is appointed. . . . Section 6650 of the Welfare and Institutions Code provides that the husband, wife, father, mother, or children of a mentally ill person, or the guardian of his or her estate, shall be jointly and severally liable for the maintenance of such person in the state institution. Section 6655 provides that if any person committed to a state mental hospital has sufficient estate to pay for his maintenance the guardian shall pay for such maintenance to the extent of the estate; and said section provides further that payment shall not be exacted if there is likelihood of patient's release from the hospital and the payment will reduce his estate to the extent that he will become a burden upon the community, and also that if the medical department certifies that the patient is not likely to recover or be released from the hospital, the guardian shall pay for his maintenance at the hospital out of his estate.

''We do not believe that the construction placed upon section 6655 by respondent is either required or justified. *We do not believe that it was the intention of the Legislature to overrule or ignore the provision of the Civil Code establishing the fundamental rights and duties of marriage,* the provisions of the Probate Code establishing the rights of wards and the duties of their guardians to protect their interests, the provision of the Welfare and Institutions Code establishing various sources from which the state may secure payment of the hospital care for incompetents, and look only to one section of the Welfare and Institutions Code as providing the one source from which an incompetent's care may be paid. . . .

''*We believe that the reasonable and proper construction of all of the applicable sections is that the husband of a wife who has been committed to a mental institution is primarily*

*liable for her maintenance there to the extent of his financial ability to pay for it*; that if she has estate over which a guardian is appointed, he may not draw upon such estate for her maintenance so long as he has the financial ability to pay for same; that it is not only the right but it is the duty of the Department of Mental Hygiene to protect and preserve the estate of a person legally committed to its care; that the Welfare and Institutions Code provides the means and method by which the state may receive payment from the insane person's estate, but this in no way releases the husband from his primary obligation, nor does it prevent the department from making proper objections in the guardianship proceeding to the shifting of said obligation to the guardianship estate." (Italics added; pp. 776-778.) A similar holding is found in *Estate of Risse*, 156 Cal.App.2d 412 [319 P.2d 789], quoting at length from *Guardianship of Thrasher, supra.* (See pp. 420-422.)

*Department of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720] ; (1965) 62 Cal.2d 586 [43 Cal.Rptr. 329, 400 P.2d 321], does not hold, as urged by respondent, that imposition of liability upon a husband for the support of his incompetent wife in a state institution denies him equal protection of the laws. While the court did hold, as applied to the liability of the estate of a deceased adult daughter for payment of charges expended on behalf of her incompetent mother, that section 6650, Welfare and Institutions Code, was unconstitutional under the equal protection provision of the California Constitution, we find no expression in the opinion that section 6650 is unconstitutional per se. Defendant therein directly challenged the right of a state to statutorily impose liability upon one adult for the cost of supporting another adult whom the state has committed to one of its hospitals for the mentally ill, but the court's discussion in footnote 4, at page 718, of the historical background of support obligations between parent and child discloses that the inquiry was limited to this relationship. The court pointed out therein (fn. 4, p. 718) that at common law there was no liability on a child to support his parents or on the parents to support an adult child and that any such obligation depends entirely upon statute. The court held that section 6650 makes an invalid class distinction in violation of the constitutional guarantee of equal protection of the law, thus an adult daughter is not liable thereunder for the support and maintenance given her incompetent mother in a state insti-

tution. *Kirchner* in no manner involved a husband's obligation and accordingly the court did not discuss the constitutional issue as applied to his liability under section 6650. Indeed, it appears that the court did not then intend to disturb the husband's liability under this section and overrule *Thrasher* and *Risse*. While expressly disapproving and overruling three cited cases—*Department of Mental Hygiene* v. *McGilvery*, 50 Cal.2d 742 [329 P.2d 689] ; *Department of Mental Hygiene* v. *Black*, 198 Cal.App.2d 627 [18 Cal.Rptr. 78] ; and *Estate of Setzer*, 192 Cal.App.2d 634 [13 Cal.Rptr. 683], involving a parent's liability (see 60 Cal.2d 723), the court distinguished *Guardianship of Thrasher*, 105 Cal.App.2d 768 [234 P.2d 230], and *Estate of Risse*, 156 Cal.App.2d 412 [319 P.2d 789] : "In *Thrasher* it was held (pp. 776-778 [3-8] of 105 Cal.App.2d) that the husband of an incompetent committed to a state mental hospital was under the duty to support her therein even though she had estate of her own. That case is of small help to plaintiff here; manifestly, the basic obligation and relevant status of the *husband* arose from the marriage contract to which he was a consenting party and no consideration was given to the question as to whether imposing liability upon one spouse for support of the other in a state institution denies equal protection of the law to the servient spouse. (See also *Estate of Risse* (1957) 156 Cal.App.2d 412, 421 [7] [319 P.2d 789].) " (60 Cal.2d 716, 719.)

It is clear that the court in *Kirchner* refused to equate the basic obligation of the husband arising out of the marriage contract with an adult daughter's obligation to support a parent. Our conclusion that the Supreme Court in *Kirchner*, by distinguishing *Thrasher*, did not eliminate the liability of all persons mentioned under section 6650, Welfare and Institutions Code, finds support in several recent cases. *Guardianship of Hicks*, 228 Cal.App.2d 629 [39 Cal.Rptr. 698], citing *Kirchner*, held that a patient's estate may be charged for his care, maintenance and support in a state mental institution without violating any constitutional provision. (228 Cal. App.2d 632.) Likewise in *Department of Mental Hygiene* v. *Lucas*, 243 Cal.App.2d 464 [52 Cal.Rptr. 552], the liability of the inmate himself or his estate was recognized under *Kirchner* in 60 Cal.2d at page 720 (243 Cal.App.2d 468). In *County of Alameda* v. *Kaiser*, 238 Cal.App.2d 815 [48 Cal. Rptr. 343], the court held that it was not a denial of equal protection of the laws to impose on a mother, to the extent

of her ability to pay, liability to the county for medical services rendered to her minor son in the county hospital. While this involved another statute, the court discussed the inapplicability of *Kirchner*. "Parental liability for support of a minor child is of ancient origin. It was recognized by such writers as Coke and Blackstone (1 Schouler, Marriage, Divorce, Separation and Domestic Relations, 857), and was the subject of an old English statute (43 Eliz. I, c. 2). It has long been statutory in California (Civ. Code, §§ 196, 206, 207). One reason for imposing this obligation is to prevent the child from becoming a public charge (*Federal Mut. Liab. Ins. Co.* v. *Industrial Acc. Com.*, *supra*, 195 Cal. 283, 289-290 [233 P. 335]). This long-recognized liability, often enforced, has not been held to be based upon an unreasonable classification. Thus *Kirchner's* proscription of denial of equal protection seems to have no application." (238 Cal.App.2d, pp. 817-818.) See also *County of Alameda* v. *Espinoza*, 243 Cal.App.2d 534 [52 Cal.Rptr. 480], upholding the parental obligation under section 903, Welfare and Institutions Code to support a minor child committed to a county institution.

While *In re Dudley,* 239 Cal.App.2d 401 [48 Cal.Rptr. 790], involved section 5260, Welfare and Institutions Code (now § 5250) providing a procedure to enforce what parental liability for support of a mentally deficient adult child may otherwise exist, the court distinguished between the classes of persons on whom liability to support the mentally ill is imposed by section 6650, Welfare and Institutions Code, and the class of persons liable under section 5260. *"Kirchner* does not expressly say that a person otherwise liable for the support of an incompetent is denied equal protection of the law because the state requires him to contribute to the support and maintenance of the dependent while he is receiving treatment from the state. In fact, *Kirchner* recognizes the liability of the inmate or patient and his estate for his care in emphasizing the language from *Hawley* so stating. (60 Cal.2d at p. 720; and see *Guardianship of Hicks* (1964) 228 Cal.App.2d 629, 632 [39 Cal.Rptr. 698].) Furthermore, from the opinion's analysis of *Guardianship of Thrasher* (1951) 105 Cal.App.2d 768 [234 P.2d 230], and *Estate of Risse* (1957) 156 Cal.App.2d 412 [319 P.2d 789] (60 Cal.2d at p. 719), and its failure to qualify the holding of those cases (see *id.* at p. 723), which required the husband to support his wife while she was committed to the state mental hospital even though she had an estate of her own, it may be inferred

that it is not a denial of equal protection of the law to provide for payments by a spouse who is otherwise liable for the support of the patient. . . ." (Pp. 408-409.)

■ Section 6650, Welfare and Institutions Code, does not create a liability in the husband that did not theretofore exist. From time immemorial and at common law the husband has had the obligation to support and maintain his mentally incompetent wife, and the liability still exists independent of statute. (*Watt* v. *Smith,* 89 Cal. 602, 603-604 [26 P. 1071].) No exception thereto exists in the support statute of this state. (See Civ. Code, §§ 155, 174, and *Klinker* v. *Klinker,* 132 Cal. App.2d 687, 697 [283 P.2d 83].■ Thus, inasmuch as a husband, independent of section 6650, is otherwise liable for the support of his mentally incompetent wife, how then is he denied the equal protection of the law in being required by the state to contribute to her care, support and maintenance while she is receiving treatment in a state mental institution? While the issue of equal protection as it applies to the liability of a husband under section 6650 has not before been raised, the Supreme Court has considered the constitutional question in upholding the right to impose liability on the patient's estate. (*Estate of Yturburru,* 134 Cal. 567 [66 P. 729].) In *Yturburru* the court said at page 569: "A law in effect requiring that patients at the hospitals for the insane shall be there supported out of their own estates is wise and reasonable, and does not come within any inhibition of the constitution against class legislation. The law, on the contrary, is general in its application, and recognizes no classification except such as in the very nature of things necessarily exists, and cannot be disregarded." In support of its conclusion the court referred to *Watt* v. *Smith,* 89 Cal. 602 [26 P. 1071], and continued: "In the last case it was held that a husband was liable for the support of his indigent wife while an inmate of the insane asylum; and on the same principle the inmate's estate would be liable." See also *In re Dudley,* 239 Cal.App. 2d 401 [48 Cal.Rptr. 790], wherein the court pointed out that since *Kirchner* inferred that it was "not a denial of equal protection of the law to provide for payments by a spouse who is otherwise liable for support of the patient" it was not unconstitutional "to seek repayment from a parent who is otherwise obligated to support a minor child. (Cf. Civ. Code, § 196; and see Welf. & Inst. Code, § 2576 [now 17300] as interpreted in *County of Alameda* v. *Kaiser* (1965) 238 Cal. App.2d 815, 817-819 [48 Cal.Rptr. 343]." (Pp. 408-409.)

In *Morganti* v. *Morganti*, 99 Cal.App.2d 512 [222 P.2d 78], the court held that the then provision of section 108, Civil Code, that the divorcing party must plead and prove either financial ability to support the insane spouse or that the latter had property sufficient to provide income for his life expectancy, unconstitutional. However, Mr. Justice Peek gave recognition to the legality of the liability of the spouse stating: "In the present case had the Legislature concluded its labors with the declaration of incurable insanity as a cause for divorce, with a declaration as to the manner of proof and with a further declaration as to the duty of support, there could be little question as to the constitutionality thereof. . . ." (Pp. 515.)

Other jurisdictions have held there to be no constitutional bar to the imposition of liability on the part of a spouse for the support of the incompetent in a state mental hospital. In *Hamilton County* v. *Thomsen* (1954) 158 Neb. 254 [63 N.W.2d 168, 171], the court stated: ". . . it is clear that a statute imposing liability on the spouse of a mentally ill person to pay the cost of maintenance in a state hospital is constitutional. *State* v. *Heupel*, 114 Neb. 797 [210 N.W. 275, 48 A.L.R. 728]; 28 Am.Jur., Insane and Other Incompetent Persons, § 44, p. 684." The court in *In re Idleman's Commitment* (1933) 146 Or. 13 [27 P.2d 305], upheld an order requiring the husband to pay a certain amount for the support of his incompetent wife; he raised the issue of due process and the contention that his liability under the statute violated the provision of the Oregon Constitution that no law shall be passed granting to any citizen or class privileges or immunities not equally belonging to all citizens. Cited in answer to this contention was, among other California cases, *Estate of Yturburru*, 134 Cal. 567 [66 P. 729]. (27 P.2d 309.)

■ "A statute obviously violates the equal protection clause if it selects one particular class of persons for a species of taxation and no rational basis supports such classification. . . ." (*Department of Mental Hygiene* v. *Kirchner*, 60 Cal.2d 716, 722 [36 Cal.Rptr. 488, 388 P.2d 720]; *County of Alameda* v. *Espinoza*, 243 Cal.App.2d 534, 542 [52 Cal. Rptr. 480].) ■ While the classification should have substantial relationship to a legitimate objective (*Dribin* v. *Superior Court*, 37 Cal.2d 345 [231 P.2d 809, 24 A.L.R.2d 864]), it is apparent that the legitimate legislative purpose of section 6650, Welfare and Institutions Code, is to provide a means of recovery by the state of the cost of maintaining an

incompetent person in a state hospital. Certainly, the one class delineated therein—husbands—is not an arbitrary and unreasonable selection, for the common law and other statutes of this state entirely independent of section 6650, have codified the moral obligation of the husband to support his wife in sickness and in health, arising out of the marital relation into which the parties voluntarily entered. ▉ In short, without reference to section 6650, Welfare and Institutions Code, the husband is otherwise liable for the support of his incompetent wife. Thus, the classification is reasonably supported by a rational basis; it differs from that in *Kirchner*—adult children, for whom at common law there was no liability to support their parents. In entering the marital state, by which a contract is created, it must be assumed that the parties voluntarily entered therein with knowledge that they have the moral and legal obligation to support the other. ▉ It is clear that a patient's estate may be charged for his care, maintenance and support in a state institution without violating any constitutional provision. (*Department of Mental Hygiene* v. *Kirchner,* 60 Cal.2d 716, 720 [36 Cal.Rptr. 488, 388 P.2d 720]; *Guardianship of Hicks,* 228 Cal.App.2d 629 [39 Cal.Rptr. 698]; *In re Dudley,* 239 Cal.App.2d 401 [48 Cal.Rptr. 790].) We think that the husband's liability falls in the same category. (*In re Dudley,* 239 Cal.App.2d 401 [48 Cal.Rptr. 790].) In this connection the court said at page 414 in *Dudley,* after quoting from *Yturburru, supra*: "In support of its conclusion the court notes the obligation of the husband to support his indigent wife while a patient as such obligation was recognized in *Watt* v. *Smith* (1891) 89 Cal. 602, 604 [26 P. 1071]. So it may be inferred that a parental obligation coupled with ability to support would render the patient one 'having means' for his own support from whom charges could be constitutionally levied." We conclude, therefore, that the classification of spouses, to wit, husband, in section 6650 is reasonable and does not fall within the *Kirchner* case. The requirement of section 6650 that the husband support his incompetent wife in a state mental institution is not a denial of equal protection.

The order is reversed.

Wood, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 8, 1967. Peters, J., was of the opinion that the petition should be granted.