[Civ. No. 26510.  First Dist., Div. Two.  Jan. 16, 1970.]

DEPARTMENT OF MENTAL HYGIENE, Plaintiff and Appellant, v. BANK OF AMERICA, as Executor, etc., Defendant and Respondent.

**950**

**COUNSEL**

Thomas C. Lynch, Attorney General, and Elizabeth Palmer, Deputy Attorney General, for Plaintiff and Appellant.

Aiken, Kramer & Cummings, Hill, Janssen, Corbett & Dunaway and John F. Kraetzen for Defendant and Respondent.

**OPINION**

**TAYLOR, J.**—The Department of Mental Hygiene (hereafter department) appeals from an adverse judgment in this action against the Bank of America (hereinafter bank) as executor of the estate of Herbert J. Kramer, to recover a sum of money due for the care, support and maintenance of his adult daughter, Elizabeth, a mentally ill person, in certain state institutions.　　The only question on appeal is whether the trial court prop-

erly concluded that under *Department of Mental Hygiene* v. *Kirchner,* 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720], as clarified 62 Cal.2d 586 [43 Cal.Rptr. 329, 400 P.2d 321], the liability imposed on a relative by Welfare and Institutions Code section 6650 cannot be constitutionally imposed on the estate of the adult patient's father.

The appeal is on the following stipulation of facts: The deceased, Herbert J. Kramer, was the father of Elizabeth Kramer, a mentally ill adult person. In February 1952, on the petition of the Health Officer of the City of Livermore, Elizabeth was committed to Agnews State Hospital. In July 1955, Elizabeth was transferred to Mendocino State Hospital and has remained a patient there since that date. Elizabeth is without means to pay all or any part of the reasonable charge for her care and maintenance in these state institutions. Her father died in December 1966, leaving a net probate estate, over which he had a power of testamentary disposition, of about $200,000. The department filed a verified creditor's claim, which was rejected. Thereafter, the department filed this action for $11,847.32 for the care and maintenance of Elizabeth from February 1, 1964, to December 1966, at the above mentioned state institutions for the treatment of mentally ill persons. This action by stipulation is based solely on Welfare and Institutions Code section 6650.

Section 6650 of the Welfare and Institutions Code, at the time the instant action was filed (Feb. 1968), provided: "The husband, wife, father, mother, or children of a mentally ill person or inebriate, the estates of such persons, and the guardian and administrator of the estate of such mentally ill person or inebriate, shall cause him to be properly and suitably cared for and maintained, and shall pay the costs and charges of his transportation to a state institution for the mentally ill or inebriates. The husband, wife, father, mother, or children of a mentally ill person or inebriate, and the administrators of their estates, and the estate of such mentally ill person or inebriate, shall be liable for his care, support, and maintenance in a state institution of which he is *a patient.* The liability of such persons and estates shall be a joint and several liability, and such liability shall exist whether the mentally ill person or inebriate has become *a patient* of a state institution pursuant to the provisions of this code or pursuant to the provisions of Sections 1026, 1368, 1369, 1370, and 1372 of the Penal Code." (Italics added.)

This statute, as it read prior to the 1965 amendment (explained in the footnote below)[1] was interpreted in *Kirchner, supra,* opinion clarified 62

---

[1] At the time of *Kirchner,* the statute read "inmate" instead of "patient" and was repealed in 1967 (Stats. 1967, ch. 1667, § 36.5) and re-enacted in substantially the same form as section 7275.

Cal.2d 586. In *Kirchner,* our Supreme Court held that article I, sections 11 and 21[2] of the state Constitution were violated by the imposition of liability pursuant to Welfare and Institutions Code section 6650 on the estate of the deceased daughter for the care, support and maintenance of the decedent's mentally ill mother, who was in a state institution. The major distinctions between the facts of *Kirchner* and those of the instant case are: first, in *Kirchner,* the patient was the parent of the decedent whose estate was sought to be charged, whereas, in the instant case, the patient is the daughter of the decedent; and second, in *Kirchner,* the patient had funds of her own, whereas, in the instant case, it is stipulated that she does not.

In *Kirchner, supra,* the Supreme Court indicated that its prior decision in *Department of Mental Hygiene* v. *Hawley,* 59 Cal.2d 247 [28 Cal.Rptr. 718, 379 P.2d 22], was dispositive of the question presented. *Hawley,* like the instant case, involved an assertion by the department of the liability of a father for the care, support and maintenance of an adult son committed to a state institution as insane and unable to stand trial for an alleged crime. There is no indication in the facts recited in *Hawley* that the adult son had any funds of his own. Significantly, *Kirchner* found the court's reasoning in *Hawley* dispositive, regardless of whether or not a patient had funds of his own. Accordingly, this fact alone cannot be relied upon by the department to distinguish the instant case from *Kirchner.*

*Kirchner* also distinguished and overruled the court's prior decision in *Department of Mental Hygiene* v. *McGilvery,* 50 Cal.2d 742 [329 P.2d 689]. In that case, the facts were essentially identical to the facts in the instant case, namely, the estate of the deceased parent had funds to pay the charges for the care and maintenance of an adult child. Further, in *Kirchner,* the court said at page 721: "It is established in this state that the mere presence of wealth or lack thereof in an individual citizen cannot be the basis for valid class discrimination," and concluded at page 722: "Section 6650 by its terms imposes absolute liability upon, and does not even purport to vest in, the servient relatives any right of control over, or to recoup from, the assets of the patient. A statute obviously violates the equal protection clause if it selects one particular class of persons for a species of taxation and no rational basis supports such classification. [Citations.] Such a concept for the state's taking of a free man's property manifestly denies him equal protection of the law."

In clarifying the *Kirchner* decision, pursuant to the remand from the

---

[2]The provisions referred to read as follows: "Sec. 11. All laws of a general nature shall have a uniform operation." "Sec. 21. No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

U. S. Supreme Court, our Supreme Court re-examined and affirmed its earlier opinion, which indicated that it was based, at least in part, on sections 11 and 12 of article I of the state Constitution. The second opinion further indicated that the California Supreme Court would reach exactly the same result under the equal protection clause of the Fourteenth Amendment to the U. S. Constitution, which contains language substantially identical to section 21 of article I of the state Constitution. The court said at page 588: "These provisions of our state Constitution have been generally thought in California to be substantially the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution. While it is our view that we should reach the same conclusion under the Fourteenth Amendment we were (and we are) in any event independently constrained to the result we reached by sections 11 and 21, article I, of the California Constitution. We so conclude by our construction and application of California law, regardless of whether there is or is not compulsion to the same end by the federal Constitution."

The department argues that the cases decided since *Kirchner,* all of which upheld the liability of a relative, necessarily negate the applicability of *Kirchner* to the instant case. We cannot agree. Only two of the subsequent cases, *Department of Mental Hygiene* v. *Kolts,* 247 Cal.App.2d 154 [55 Cal.Rptr. 437], and *Department of Mental Hygiene* v. *O'Connor,* 246 Cal. App.2d 24 [54 Cal.Rptr. 432], involved Welfare and Institutions Code section 6650. In both *Kolts* and *O'Connor,* the patients were the spouses of the persons against whom liability was asserted. This is a situation that the court had expressly excepted from its original reasoning in *Kirchner* by distinguishing *Guardianship of Thrasher,* 105 Cal.App.2d 768 [234 P.2d 230]. Furthermore, as noted in *Kolts,* at page 165, and *O'Connor,* at page 27, marriage is a contract voluntarily entered into with one of its incidents the support and maintenance of the parties by each other.

In *County of Alameda* v. *Kaiser,* 238 Cal.App.2d 815 [48 Cal.Rptr. 343], *County of Alameda* v. *Espinoza,* 243 Cal.App.2d 534 [52 Cal.Rptr. 480], and *In re Shaieb,* 250 Cal.App.2d 553 [58 Cal.Rptr. 631], the person for whose care, support and maintenance liability was imposed was a minor child. As noted in the first *Kirchner* opinion, the liability for the support of minor children is one arising at common law and not by statute. The opinion specifically referred to this point at page 718, footnote 4, and indicated that it did not purport to interfere with the common law obligation of parents to minor children. Furthermore, both the statutes and the factual background of *Kaiser, Espinoza,* and *Shaieb* are significantly different from that involved in the instant case. For instance, in *Kaiser,* the charge sought to be imposed was for medical care that the parent had specifically and affirmatively sought for the minor child. In the instant case,

Elizabeth, an adult, was committed on the application of a county public health officer.

In *Guardianship of Hicks,* 228 Cal.App.2d 629 [39 Cal.Rptr. 698], and *Estate of Preston,* 243 Cal.App.2d 803 [52 Cal.Rptr. 790], the liability was asserted and upheld against the patients' own estate or funds. This, likewise, was a matter expressly recognized and exempted from the *Kirchner* holding.

In *In re Dudley,* 239 Cal.App.2d 401 [48 Cal.Rptr. 790], the parent personally had her mentally deficient child committed and was then ordered to contribute to the care, support and maintenance of the child. This court (Division One) in upholding the liability, expressly recognized that the Legislature had established a different system for the care, support and maintenance of mentally deficient persons than the mentally ill persons involved in the instant case and *Kirchner. Dudley* also emphasized, at page 408, the distinction between the statute there involved, Welfare and Institutions Code section 5260, which merely prescribed a procedure to enforce pre-existing liability, and section 6650, which imposes liability.

■  The department further attempts to argue that the liability sought to be imposed under section 6650 is proper because of the statutory obligation prescribed in Civil Code section 206, set forth in full in the footnote below.[3] Under the reasoning of *Kirchner* emphasizing that it is the general public responsibility alone to maintain adult relatives, other than spouses, in mental institutions, Civil Code section 206, as applied to the instant case, is subject to the same constitutional infirmity as is Welfare and Institutions Code section 6650.

Finally, the department cites *Beach* v. *Government of Dist. of Columbia,* 320 F.2d 790 [116 App. D.C. 68]. In that case, the circuit court held that imposing support liability on a father for an adult child did not violate due process as it was proper to attach "legal significance to the natural bonds of consanguinity" and enforce a moral obligation. *Beach* was decided before *Kirchner,* wherein our Supreme Court expressly rejected this approach by noting that the cost of maintaining state institutions and their inmates cannot be arbitrarily charged to one class in the society, but is a public cost borne by all (see also the excellent discussion of this aspect of *Kirchner* in tenBroek, *California's Dual System of Family Law, Part III,* 17 Stan. L.Rev. 614 at pp. 640-643).

---

[3]"It is the duty of the father, the mother, and the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding."

■ We conclude that the trial court properly entered judgment in favor of the bank as executor of the estate of Herbert J. Kramer.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied February 13, 1970, and appellant's petition for a hearing by the Supreme Court was denied March 11, 1970.